JOHN M. LEA *et al. v.* THE CITY OF MEMPHIS.

1. MUNICIPAL CORPORATION. *Tax paid by reason of threats of litigation, etc. Not recoverable. When.* A tax paid by reason of threats of litigation or the apprehension of the levy of distress warrants, cannot on this ground be recovered, although the levy and tax was illegal, there being no fraud or mistake of facts, but only mistake as to legal liability. A State or city may and ought to refund a tax so paid.

2. SAME. *A City is contracting party, and not agent. When.* In a matter of taxation the city is contracting party and not the agent of the tax payers.

3. SAME. *Certificates of indebtedness. Issued by city. Valid. When.* A certificate of indebtedness issued by a city, upon its own ordinance, to individuals, who have paid illegal assessments, are valid and binding obligations against the city, and founded upon a valid consideration.

4. SAME. *Snme. Issued by the city of Memphis receivable for taxes. When.* The certificates of indebtedness issued by the city of Memphis in 1873, were receivable for taxes on account of "Nicholson pavement" for the years 1873–74–75, from those who had paid the original assess-

ment to Brown, but while this was so, a State court would not interfere with the special "mandamus tax" levied under the mandate of the U. S. Court, as this would be in effect to defeat the execution of the order of said court.

FROM SHELBY.

Appeal from the Chancery Court. R. J. MORGAN, Chancellor.

ESTES & ELLIOTT, HARRIS, McKISSICK & TURLEY, and L. P. McFARLAND for complainants.

S. P. WALKER for defendant.

DEADERICK, C. J., delivered the opinion of the Court.

By an act of the Legislature, passed in 1866, the City of Memphis was empowered to contract for the paving of the streets and alleys of the city with Nicholson and stone pavements, and to assess the costs thereof upon the property abutting thereon. Under the authority of this act the city ordained, in 1867, that such of its streets and alleys as the Mayor and Aldermen might designate, should be paved and the costs assessed upon the property fronting thereon. The ordinance prescribes the manner in which the city may contract for the work and how the assessments are to be collected off the property owners.

A contract was made with T. E. Brown & Co. to lay down Nicholson and stone pavements upon several of the streets of the city, and as the work progressed bills were made out, certified to be correct by the City Engineer and delivered to the contractors, and

were by them presented for payment to the owners of the property in front of which such work was done.

Complainants, as they allege, paid large sums upon such assessments to avoid litigation and sale of their property—the assessments having been declared by the act and ordinances liens upon the property assessed. Many of the citizens resisted the assessment; litigation ensued, and at April term, 1872, of this court, in the case of *Brown* v. *Hart,* it was held that such assessments were illegal, and that the act of the Legislature and ordinances of the city authorizing the same, were unconstitutional and void. Then follows the act of the Legislature of March 24, 1873, empowering the City of Memphis to levy a tax, in addition to other taxes, sufficient to pay the entire costs of the pavements, and to allow those who had paid their assessments credits for the same in the payment of said taxes.

The city thereupon passed an ordinance in 1873, authorizing the Mayor to issue certificates of indebtedness to those who had made payments upon said assessments for the Nicholson and stone pavements. This ordinance made such certificates receivable at their face value and interest in payment of any tax thereafter levied by the city to cover the costs of said Nicholson and stone pavements.

The form of the certificate is prescribed in the ordinance. It is, that "The City of Memphis is indebted to ———— or order in the sum of ———— to bear interest at the rate of six per centum per annum, from the —— day of ———— until this certificate is redeemed." It is further stipulated that this certificate

is receivable only in payment of any tax that may be levied by the City of Memphis to cover the entire cost of laying said pavements.

In the meantime, Brown & Co. had brought suit in the U. S. Circuit Court at Memphis, against the city upon their contract and recovered. Upon appeal to the U. S. Supreme Court the decree was modified; but it was held that the work was done under a contract with and by the employment of the city, and that it was liable to the contractors upon that contract. 20 Wal., 311; and the same having been remanded to U. S. Circuit Court, a *mandamus* was issued compelling the city to levy a tax to pay the amount of the decree.

The city, it is alleged, thereupon levied a tax of seventy cents on the $100, under the *mandamus* to pay Brown & Co., and also a tax of same amount to reimburse those who had paid to the contractors under the void assessment. This latter tax was payable in the city certificates of indebtedness issued to those who had paid the illegal asessments. The former, or "*mandamus* tax*,*" to pay Brown's decree, was payable only in cash, and complainants and all others were bound by the ordinance to pay it in cash. These taxes were imposed for the year 1873, and an additional "*mandamus* tax*"* of thirty cents on the $100 worth of property was levied for the year 1874; thus for those two years, according to the terms of the ordinance levying the "*mandamus* tax*,*" a large additional tax payable in cash was imposed upon complainants, notwithstading they held the evidence of the city indebt-

edness to them in an amount greatly exceeding the amounts of their taxes of both kinds; and this indebtedness having arisen from payments made by them in the extinguishment *pro tanto* of the debt of the city to Brown & Co., for the payment of the balance of which the "*mandamus*" was imposed. The tax collector, it is alleged, refused to receive the certificates of indebtedness which were tendered in payment of the "*mandamus* tax."

The bill further alleges that the city is insolvent, and that the power to levy the reimbursing tax has been repealed by the act of 1875, and that said city is about to lay additional "*mandamus* tax" upon complainants. The bill prays that the city be enjoined from further claim for paving tax off complainants, until the other tax payers have paid their proportion of the same.

The city demurred to the bill; the demurrer was overruled, and the city has appealed to this court.

It is here insisted for the city that the complainants, upon the facts stated, cannot maintain an action against the city to recover the assessments paid by them, and are not entitled to any relief; that although the city was the contracting party for the tax payers, the latter had voluntarily paid the assessments and had thereby ratified and adopted the acts of the city performed by it as the agent of the parties assessed; that taxes illegally assessed and collected, cannot be recovered back, there being no fraud or mistake of fact, although the payor is mistaken as to his legal liability.

Mr. Cooley, in his recent work on taxation, at page 566, says: "That a tax voluntarily paid cannot be recovered back, has been held by the authorities, with very few exceptions. It is immaterial in such a case that the tax has been illegally laid or even that the law under which it was laid was unconstitutional." And he cites numerous adjudicated cases to support the doctrine announced in the text. The rule is laid down to the same effect in Dillon on Mun. Corp., section 751, and notes.

And while it is true that threats, or litigation, or apprehension of the levy of distress warrants on property by the weight of authority would not make a payment of taxes under such threats or apprehensions compulsory, yet where taxes have been wrongfully exacted by the State or by a city, they may and ought to be refunded.

It is very ingeniously argued for the city, that in the contract for the paving the city contracted as agent of the tax payers, and that by the terms of the contract the parties assessed were primarily liable to the contractors and the city merely the guarantor for their performance.

This construction of the contract, though plausible as to some of its expressions, is inconsistent with its obvious purposes and meaning. As held in 20 Wallace, the city was in fact the contracting party, and stipulated in the contract to have the tax payers pay directly to the contractors, thus providing for making the payments without the employment of other agencies. But the fund to be provided for the payments was to

be raised by the assessments upon the property holders by the direct exercise of the taxing power of the city. The city in fact made the contract for the work and levied the taxes for the payment, and provided simple and effective agencies for its collection.

The tax having been wrongfully and illegally imposed, collected and applied to the benefit of the city in the discharge of its indebtedness, it was right and lawful for the city to provide for the indemnity of those from whom it had been wrongfully and illegally exacted.     Cool. on Tax., 530.

This was done by the ordinance already referred to, pursuant to the act of March 24, 1873, by which the Mayor was authorized and required to issue certificates of indebtedness to all persons who had paid the illegal assessments, for the amount thereof, thus not only acknowledging their liability to repay the amounts so illegally exacted, but foreshadowing a mode afterwards adopted, by which the same were to be paid.

The city thus became bound by its solemn and deliberate recognition of this indebtedness and promise to pay it.     And the recognition and promise enure to the benefit, not only of those who procured certificates of indebtedness, but equally to all others who paid the assessments; the money having been paid for the benefit of the city, constitutes a debt upon it.

In the case of *Nelson* v. *The Town of Millford,* an illegal tax had been levied and collected by the assessors, and they, to prevent actions against them by persons whose property had been distrained, refunded the tax so collected, and the town authorities directed

that the sums paid back by the assessors should be refunded; subsequently this order to pay the assessors was rescinded. But it was held that the vote to refund to the assessors the amounts refunded by them to the tax payers, was a promise founded upon a valid consideration and could not be rescinded by a subsequent vote. 7 Pickering, 18.

While, therefore, we are of opinion that the taxes of 1873 and 1874, which were levied to reimburse those who had paid the pavement assessments, may be paid by the city's certificates and by its indebtedness for such payments, we cannot interfere with the special *mandamus* tax levied under the mandate of the U. S. Circuit Court to pay Brown's debt. To do so, would have the effect practically to defeat the execution of the order of that court, by diverting the means intended to pay Brown's debt to other purposes.

But we hold that complainants are entitled to an account to ascertain the amount due them from the city, and to have a decree for such sums as may be ascertained to be due them.

The Chancellor's decree overruling the demurrer will be affirmed, and the cause will be remanded for answer and for further proceedings, in conformity to the principles of this opinion.

The costs of this court will be paid by the city.